UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

HELENA CHEMICAL COMPANY,    )    Civil Action No.: 4:06-cv-2583-RBH
as servicing agent for Helena Funding    )
Corporation and Helena Services    )
Corporation,    )
    )
    Plaintiff,    )
v.    )    **ORDER**
    )
BILLY W. HUGGINS, and HUGGINS    )
FARM SERVICE, INC.,    )
    )
    Defendants.    )
_____)

Pending before the court are: 1) Defendants' [Docket Entry #84] motion for partial summary judgment; and 2) Plaintiff's [Docket Entry #87] motion for partial summary judgment. A hearing was held on the motions for partial summary judgment on October 16, 2008. For the reasons stated below, the court denies Defendants' motion for partial summary judgment and grants in part and denies in part Plaintiff's motion for partial summary judgment.

## Background

This case arises out of the business relationship between Plaintiff, Helena Chemical Company, as servicing agent for Helena Funding Corporation and Helena Services Corporation, ("Helena"), and Defendants Billy W. Huggins and Huggins Farm Service, Inc. (collectively referred to as "Huggins").

Helena sells farm and agricultural chemicals to suppliers for retail sales to farmers and the agricultural industry. Huggins Farm Service is in the business of supplying agricultural chemicals to farms in Marion and Horry Counties in South Carolina and is owned by

Defendant Billy W. Huggins.

From 1993 until 2006, Huggins Farm Service promoted and sold agricultural products distributed by Helena pursuant to a Consignment and Commissioned Sales Agreement ("Sales Agreement"). The Sales Agreement provided that Helena would provide inventory to Huggins Farm Service on a consignment basis, whereby the title to the inventory would remain in Helena's name until such inventory was sold to the customer.

Huggins Farm Service and Billy Huggins signed a Promissory Note dated June 7, 2005, made payable to Helena in the amount of $450,000 with an interest rate of 10.5%. The Promissory Note allowed Huggins Farm Service to borrow from a line of credit in the amount of $450,000 to repay outstanding accounts receivable due to Helena at an interest rate of 10.5%.

Although the parties dispute who initiated the discussions, sometime in 2005 the parties began discussing the purchase of Huggins Farm Service by Helena. Billy Huggins' price to Helena for Huggins Farm Service was $750,000. After Helena decided not to purchase Huggins Farm Service, the business relationship between Helena and Huggins deteriorated and this lawsuit ensued.

Helena alleges that Huggins Farm Service has defaulted on the amounts owed under the Sales Agreement and Promissory Note. Helena further alleges that Billy Huggins is also individually liable for the amount owed pursuant to the Promissory Note. Helena claims the amounts due by Huggins Farm Service and Huggins, as of the filing of the complaint, are $686,054.52, plus costs and attorneys fees, with interest accruing on a daily basis.

Helena has brought causes of action for: 1) Breach of the Guaranty; 2) Breach of

2

Contract; 3) Unjust Enrichment; 4) Breach of Security Agreement; 5) Conversion; 6) Violation of Statute of Elizabeth; and 7) Attorney's Fees.  Huggins Farm Service and Billy Huggins have moved for summary judgment as to Helena's claims for Unjust Enrichment, Conversion, and Violation of Statute of Elizabeth.  At the hearing, Helena withdrew its claim under the Statute of Elizabeth. *See* [Docket Entry #148].

Huggins alleges that Helena misrepresented its intent to purchase Huggins Farm Service in order to induce Huggins to disclose confidential financial information regarding his business as well as information relating to a lease agreement entered into by Carolyn Doyle d/b/a Pee Dee Farm Company, as tenant, for the lease of a gas station, convenience store, and warehouse located in Galivant's Ferry, South Carolina.

Huggins utilized the warehouse portion of the property leased by Carolyn Doyle in the operation of Huggins Farm Service.  In November 2005, the landlord allegedly notified Doyle that the lease would be terminated and that Doyle and Huggins had to vacate the premises by December 31, 2005 because Helena was going to lease the property beginning January 1, 2006.[1]

Huggins also alleges that in reliance on Helena's representations, he rejected an offer from another buyer willing to purchase his business for $750,000.  Huggins further alleges that, as a result of Doyle's eviction, his business suffered tremendously and he was forced to sell various business equipment and assets to recoup losses and take advantage of buyers willing to purchase the equipment and assets.

Huggins Farm Service and Billy Huggins brought counterclaims against Helena for: 1)

---

[1]     Counsel for Helena represented at the hearing that Helena never leased the property. [Transcript, at 8, Docket Entry #150].

Breach of Contract; 2) Breach of Contract Accompanied by Fraud; 3) Negligence; 4) Negligent Misrepresentation; 5) Civil Conspiracy; 6) Violation of South Carolina Unfair Trade Practices Act; 6) Fraud; 8) Violation of Covenant of Good Faith and Fair Dealing; and 9) Interference with Prospective Contract.  Helena has moved for summary judgment as to Huggins' claims for Breach of Contract Accompanied by Fraud, Negligence, Negligent Misrepresentation, Civil Conspiracy, Violation of South Carolina Unfair Trade Practices Act, Fraud, and Interference with Prospective Contract.  At the hearing, Huggins withdrew its negligence claim. *See* [Docket Entry #148].

### **Summary Judgment Standard**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Summary judgment is appropriate when a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Failure of proof of an essential element of the case

4

"necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

## Discussion

I.    Huggins' Motion for Partial Summary Judgment

    A.    Unjust Enrichment

Helena's unjust enrichment claim is based upon the allegation that Huggins received inventory from Helena in 2005 with a value of approximately $9,972.19 and failed to repay Helena for the value of that inventory.  Accordingly, Helena alleges that Huggins was unjustly enriched in the amount of $9,972.19.

Huggins argues that Helena's unjust enrichment claim fails because Helena has an adequate remedy at law and therefore is not entitled to equitable relief.  Huggins argues that the inventory at issue was subject to a Security Agreement executed in favor of Helena. Therefore, Huggins argues, Helena has an adequate statutory remedy to recover the amount of the alleged unjust enrichment under South Carolina's Uniform Commercial Code, S.C. Code Ann. §§ 36-1-101 *et seq.*

South Carolina Code Ann. § 36-1-103 states that "[u]nless displaced by the particular provisions of [the UCC], the principles of law and equity . . . shall supplement its provisions." Displacement occurs when the UCC comprehensively addresses an issue. *Hitatchi Elec. Devices (USA), Inc. v. Platinum Techs., Inc.*, 621 S.E.2d 38, 41 (S.C. 2005) (holding that

buyer cannot pursue common law remedies for seller's alleged breach of warranty).  For

example, Article 2 comprehensively addresses a buyer's remedies for breach of warranty.

However, as to the remedies available to a secured party under Article 9 of the UCC,

South Carolina courts have held that pre-UCC remedies remain available to a secured party in

the event of the debtor's default.  In *Nat'l Bank of South Carlina v. Daniels*, the South

Carolina Court of Appeals stated:

> Section 36-9-501 of the Uniform Commercial Code established the
> rights of a secured party in the collateral after the debtor's default. . .
> Section 36-9-501(1) creates no substantive cause of action in favor of
> the secured party.  Rather, the secured party must look to state law to
> determine "available judicial procedures" other than foreclosing or
> securing a judgment against the debtor.  *Pre-Code remedies are still
> available to the secured party*.

322 S.E.2d 689, 691 (S.C. Ct. App. 1984) (emphasis added).  "The remedies given the creditor

by the Uniform Commercial Code upon a debtor's default do not exclude non-Code remedies."

68A Am. Jur. 2d *Secured Transactions* § 531 (2008).  Aside from referring to the general

proposition that where there is an adequate remedy at law, equitable relief is not appropriate,

Huggins has offered no authority to support the proposition that a secured party is precluded

from seeking equitable remedies against a debtor in default.

Additionally, at the hearing, counsel for Helena indicated that the claim for unjust

enrichment was separate and distinct from the claims for breach of security agreement and

breach of contract.  The claim for unjust enrichment involves inventory received by Huggins

d/b/a Pee Dee Farms Company.  The claims for breach of the security agreement and breach

of contract involve Huggins and Huggins Farm Service, Inc.  Contrary to Huggins' assertions,

the record does not appear to contain a security agreement that covers inventory received by

6

Huggins d/b/a Pee Dee Farms Company.[2]

Because the UCC did not displace the pre-Code remedies available to a secured party in the event of a debtor's default and the inventory at issue does not appear to be covered by any Security Agreement in the record, Huggins' motion for summary judgment is denied as to Helena's claim for unjust enrichment.

B.     Conversion

Helena's conversion claim is based upon the allegation that Huggins sold or otherwise disposed of collateral under a Security Agreement.  Huggins argues that summary judgment should be granted as to Helena's conversion claim because Helena has failed to set forth any evidence that Helena either had title to, or right to possession of, the equipment that was allegedly sold.

The wrongful detention of another's personal property may give rise to an action for conversion. *Owens v. Andrews Bank & Trust Co.*, 220 S.E.2d 116, 119 (S.C. 1975).  To prevail in a conversion action, the plaintiff must prove either title to or a right to possession of the personal property at the time of the conversion. *Causey v. Blanton*, 314 S.E.2d 346, 348 (S.C. Ct. App. 1984).

When a debtor defaults under a security agreement, the secured party has the right to take possession of the collateral. *Daniels*, 322 S.E.2d at 692.  Helena submitted the affidavit of Charles O'Neal, which states that Huggins allegedly sold collateral, a spreader truck, to Marvin Johnson.  Upon Huggins' alleged default under the Security Agreement, Helena was

---

[2]     This statement is not intended to be a conclusive interpretation of the scope of the security agreement attached as Exhibit D to the Amended Complaint. *See* [Security Agreement, Docket Entry #62-5].

7

arguably entitled to take possession of the spreader truck. Taking the evidence in the light most favorable to Helena, it is a disputed issue of material fact as to whether Helena had the right to take possession of the spreader truck at the time of the alleged conversion. Summary judgment is therefore denied as to Helena's conversion claim.

II.     Helena's Motion for Partial Summary Judgment

A.     Breach of Contract Accompanied By A Fraudulent Act

Huggins' breach of contract accompanied by a fraudulent act claim is based on an alleged breach of the Sales Agreement by Helena. Huggins claims that Helena breached the Sales Agreement by failing to pay proper commissions and improperly charging Huggins for Helena products.

In order to recover for breach of contract accompanied by a fraudulent act, the plaintiff must establish: 1) a breach of contract; 2) fraudulent intent relating to the breaching of the contract and not merely to its making; and 3) that the breach was accompanied by a fraudulent act. *Minter v. GOCT, Inc.*, 473 S.E.2d 67, 70 (S.C. Ct. App. 1996). "Breach of contract accompanied by a fraudulent act is not simply a combination of a claim for breach of contract and a claim for fraud." *Ball v. Canadian American Exp. Co., Inc.*, 442 S.E.2d 620, 622 (S.C. Ct. App. 1994). Unlike a fraud claim, which goes to the *making* of the contract, a claim for breach of contract accompanied by a fraudulent act "requires proof of fraudulent intent relating to the *breaching* of the contract not merely to its making." *Ball*, 442 S.E.2d at 623 (emphasis added). Fraudulent intent is normally proved by circumstances surrounding the breach. *Floyd v. Country Squire Mobile Homes, Inc.*, 336 S.E.2d 502, 503-4 (S.C. Ct. App. 1985). The fraudulent act that must accompany the breach is defined as "any act

8

characterized by dishonesty in fact or unfair dealing." *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 597 S.E.2d 881, 883 (S.C. Ct. App. 2004). The fraudulent act may be prior to, contemporaneous with, or subsequent to the breach, but it must be connected with the breach itself and may not be too remote in time or character. *Floyd*, 336 S.E.2d at 504.

Helena argues that summary judgment should be granted because Huggins has failed to put forward any evidence of a fraudulent act independent of the breach itself.

Huggins alleges a number of alleged fraudulent acts which accompany the claimed breach. Although the court questions whether many of the alleged fraudulent acts are sufficiently connected with the breach itself, the court finds Huggins' allegation that Helena intentionally withheld the results of an in-house audit concerning Huggins' account with Helena to be sufficiently connected to the breach and not too remote in time or character.

At the hearing, Huggins argued that account information had previously been made available to them, but when Huggins raised the issue of improper invoicing and unpaid commissions, Helena suddenly refused to disclose the information. Helena responded that withholding the audit information cannot be a fraudulent act because there was no duty to disclose the audit information in the first place. However, an argument could be made that the duty to disclose pertinent account information was voluntarily undertaken by Helena based on its prior actions and course of dealing with Huggins.

Additionally, irrespective of Helena's duty to disclose argument, the fraudulent act that must accompany the breach is broadly defined as any act characterized by dishonesty in fact or unfair dealing so long as the act is sufficiently connected with the breach itself. *See Rotec Servs., Inc.*, 597 S.E.2d at 883; *Floyd*, 336 S.E.2d at 504. The circumstances under which the

9

audit information was allegedly withheld, coupled with the previous disclosure of account information, creates an inference that the act of withholding the audit information constituted dishonesty in fact or unfair dealing.  Taking the evidence in the light most favorable to Huggins, a reasonable juror could conclude that withholding the audit information was a fraudulent act and that such fraudulent act accompanied the breach of the Sales Agreement. Therefore, Helena's motion for partial summary judgment is denied as to Huggins' claim for breach of contract accompanied by a fraudulent act.

        B.     <u>Fraud and Negligent Misrepresentation</u>

Huggins alleges that Helena committed fraud when it misrepresented its intention to purchase Huggins Farm Service and lease two warehouses.  Similarly, in its negligent misrepresentation claim, Huggins claims that Helena negligently misrepresented its intent to purchase Huggins Farm Service and lease two warehouses.  Helena argues that Huggins' fraud and negligent misrepresentation claims should be dismissed because the agreement to purchase Huggins Farm Service and lease two warehouses was unenforceable under the statute of frauds and evidence of a mere broken promise is not sufficient to prove fraud or negligent misrepresentation.  Finally, Helena argues that Huggins had no right to rely on any alleged statement regarding the purchase of the business and lease of the warehouses because the parties were business associates engaged in arms length negotiations.

In order to prove fraud, the following elements must be shown by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the

10

hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *Ardis v. Cox*, 431 S.E.2d 267, 269 (S.C. Ct. App. 1993).  In order to recover for negligent misrepresentation, a plaintiff must prove: 1) a false representation made by the defendant to the plaintiff; 2) a pecuniary interest by the defendant in making the statement; 3) a duty of care owed by the defendant to see that truthful information was communicated to the plaintiff; 4) the defendant breached the duty by failing to exercise due care; 5) the plaintiff justifiably relied on the representation; and 6) the plaintiff suffered a pecuniary loss as a direct and proximate result of reliance on the representation. *Sauner v. Public Serv. Auth. of South Carolina*, 581 S.E.2d 161, 166 (S.C. 2003).

Huggins' fraud and negligent misrepresentation claims fail primarily for two reasons. First, Huggins had no right to rely on the alleged representation that Helena intended to purchase Huggins Farm Service and lease two warehouses.  Huggins argues that there was justifiable or reasonable reliance on the alleged representation because a confidential or fiduciary relationship existed between Helena and Huggins arising from the 13 year supplier-retailer business relationship between them.

"Where there is no confidential or fiduciary relationship, and an arm's length transaction between mature, educated people is involved, there is no right to rely." *Florentine Corp., Inc. v. PEDA I, Inc.*, 339 S.E.2d 112, 114 (S.C. 1985); *Poco-Grande Invs. v. C&S Family Credit, Inc.*, 391 S.E.2d 735 (S.C. Ct. App. 1990).  Under South Carolina law, "[a] confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one imposing the confidence." *Brown v. Pearson*, 483 S.E.2d 477,

11

484 (S.C. Ct. App. 1997). "A fiduciary relationship cannot be established by the unilateral action of one party. The other party must have actually accepted or induced the confidence placed in him." *Steele v. Victory Sav. Bank*, 368 S.E.2d 91, 94 (S.C. Ct. App. 1988). "Although whether a fiduciary relationship has been breached can be a question for the jury, the question of whether one should be imposed between two classes of people is a question for the court." *Hendricks v. Clemson University*, 578 S.E.2d 711, 715 (S.C. 2003).

The court concludes that no confidential or fiduciary relationship existed between the parties in this case. Helena and Huggins are two separate business entities who were engaged in an arms length transaction. Although the past supplier-retailer business relationship lasted for approximately 13 years, there is simply no basis for finding a confidential or fiduciary relationship between the parties regarding the sale or purchase of a business. Nothing in the record suggests that Helena actually accepted or induced a special confidence. *See Brown*, 483 S.E.2d at 484. Furthermore, the court has found no South Carolina case finding a confidential or fiduciary relationship under the circumstances of this case. As a federal court sitting in diversity, it is not this court's function to expand South Carolina common law as to what creates a fiduciary relationship.

Because there is no confidential or fiduciary relationship, and the discussions concerning the purchase of Huggins Farm Service and the lease of two warehouses were conducted at arms length by mature, educated people, the court finds that Huggins had no right to rely on Helena's alleged representation that it would purchase Huggins Farm Service and lease two warehouses.

Second, Huggins' fraud and misrepresentation claims are due to be dismissed because,

at best, Huggins' evidence consists of a mere broken or unfulfilled promise to purchase

Huggins Farm Service and lease two warehouses.  Fraud must relate to a present or pre-

existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to

future events. *Woodward v. Todd*, 240 S.E.2d 641, 643 (S.C. 1978).  A mere unfulfilled

promise to do an act in the future cannot support an action for fraud. *Foxfire Village, Inc. v.

Black & Veatch, Inc.*, 404 S.E.2d 912, 917 (S.C. Ct. App. 1991).  Likewise, "[e]vidence of a

mere broken promise is not sufficient to prove negligent misrepresentation." *Sauner*, 581

S.E.2d at 166.  To be actionable as a misrepresentation, the representation must relate to a

present or pre-existing fact and be false when made. *Koontz v. Thomas*, 511 S.E.2d 407, 413

(S.C. Ct. App. 1999).  Representations based on statements as to future events or unfulfilled

promises are not usually actionable. *Koontz*, 581 S.E.2d at 167.  Helena's alleged promise or

representation that they intended to purchase Huggins Farm Service and lease two warehouses

is nothing more than a promise to do something in the future.  The court notes that Huggins

has not brought a cause of action for breach of contract regarding the alleged agreement by

Helena to purchase Huggins Farm Service and lease two warehouses.

Helena also asserts that the statute of frauds bars the claims because the leasing of the

two warehouses was unenforceable under both S.C. Code Ann. § 32-3-10 and § 27-35-20.

Huggins argues that the purchase of "goodwill" of the business and "business assets" have

nothing to do with the statute of frauds and the statute is inapplicable to them.  Additionally,

Helena raised for the first time at the hearing the U.C.C. statute of frauds codified at S.C.

Code Ann. § 36-2-201, which provides that a contract for the sale of "goods" for the price of

$500 or more is unenforceable unless reduced to writing.

Huggins testified in his deposition as follows:

> Q.   What was the deal?
>
> A.   That they was buying my Huggins Farm Service and leasing Dixon's Tobacco Warehouse and Galivant's Ferry Store - - Farms Warehouse for $750,000.  And in leasing those facilities he wanted me to guarantee him five years at Dixon's warehouse, and I did.

[Deposition of Billy Huggins, at pg. 64, Docket Entry #90-2].  In another portion of Huggins' deposition, he stated:

> [T]hey were going to buy Huggins Farm Service and my equipment, my assets, pay me goodwill for the three point some millions dollars worth of business; they would hire all of my employees, and now I was informed by Johnny Skipper and David Duvall at Galivant's Ferry, Pee Dee Stores that they had leased those properties at Galivant's Ferry to Helena Chemical Company.

[Deposition of Billy Huggins, at pg. 62-63, Docket Entry #90-2].

The leasing of the two warehouses is clearly covered by the statute of frauds.  However, it is unclear whether the lease of the two warehouses was severable from the agreement to purchase Huggins Farm Service.  It is also unclear whether the "business assets" and "equipment" mentioned in the deposition testimony falls within the definition of "goods" as contemplated by § 36-2-201.

Neither party has briefed the severability issue nor the questions regarding the applicability of § 36-2-201 to the facts of this case.  While the court has not been provided with any authority regarding the severability issue, the general rule is that if a contract is not severable, and part of it is within the statute of frauds, the contract is unenforceable as a whole and no action can be maintained to enforce a part which would not have been affected by the statute of frauds if it had been separate and distinct from the other part. *See* 73 Am.

Jur. 2d *Statute of Frauds* § 435.  On the other hand, when an agreement is divisible, if some portions are not covered by the statute of frauds, those portions are enforceable. *See id.* Additionally, Helena argues that Huggins cannot circumvent the operation of the statute of frauds by bring an action in tort, when the tort action is based primarily on an unenforceable contract. *See McDabco, Inc. v. Chet Adams Co.*, 548 F. Supp. 456, 458 (D.S.C. 1982).

Regardless, the court need not reach these issues on the statute of frauds because the claims of fraud and negligent misrepresentation cannot proceed for the reasons stated earlier.

### D.    Civil Conspiracy

Huggins alleges that representatives of Helena conspired with each other and third parties for the purpose of injuring Huggins.  Huggins alleges that, as a result of the civil conspiracy, it has suffered special damages, including lost revenue and profits, loss of goodwill of Huggins' business, lost employees, lost customers, and lost opportunity to sell Huggins Farm Service.

A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff. *Lawson v. S.C. Dept. of Corrections*, 532 S.E.2d 259, 261 (S.C. 2000).  A civil conspiracy consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage. *Vaught v. Waites*, 387 S.E.2d 91 (S.C. Ct. App. 1989).  A conspiracy is actionable only if overt acts pursuant to the common design proximately cause damage to the party bringing the action. *Future Group, II v. Nationsbank*, 478 S.E.2d 45, 51 (S.C. 1996); *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 278 S.E.2d 607 (S.C. 1981).  The difference between civil and criminal conspiracy is that in criminal conspiracy the agreement is the

gravamen of the offense, whereas in civil actions, the gravamen of the tort is the damage resulting to plaintiff from an overt act done pursuant to a common design. *Vaught v. Waites*, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989).

The lawyers submitted additional authority on the civil conspiracy claim after the hearing. During the hearing, the court referenced the elements of civil conspiracy noting that there must be a combination of two or more persons for the purpose of injuring the plaintiff, in addition to the requirement of special damage. The court questioned Huggins' counsel regarding what evidence in the record existed to show that other alleged conspirators, besides Helena, possessed an improper motive, purpose or intent to injure Huggins. Notably, no co-conspirators have been named parties in this lawsuit.

Counsel for Huggins indicated that Messrs. Johnson, Duvall, and Skipper conspired with Helena to injure Huggins. Huggins' counsel cited the following as evidence of improper motive, intent or purpose to injure: 1) deposition testimony of Charles O'Neal that Skipper and Duvall had made the statement that Huggins was a "crook;" 2) Helena's refusal to renew its Sales and Consignment Agreement with Huggins after 13 years without a justifiable explanation; 3) the timing of the termination of the Sales and Consignment Agreement within a day of receiving notification that Doyle and Huggins could no longer rent the Galivant's Ferry warehouse; 4) alleged secret meetings between Helena and the co-conspirators regarding leasing the warehouse.

Allegation of an unlawful act is not required to state a cause of action for civil conspiracy, although a civil conspiracy may be furthered by an unlawful act. *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 483 S.E.2d 789, 795 (S.C. Ct. App. 1997), *aff'd in part,*

16

*rev'd in part* 514 S.E.2d 126 (S.C. 1999). An action for civil conspiracy may exist even though the defendant committed no unlawful act and no unlawful means were used. *Lamotte v. Punch Line of Columbia, Inc.*, 370 S.E.2d 711, 713 (S.C. 1988). Thus, lawful acts may become actionable as a civil conspiracy when the "object is to ruin or damage the business of another." *LaMotte*, 370 S.E.2d at 713. "Conspiracy may be inferred from the very nature of the acts done, the relationship of the parties, the interests of the alleged conspirators and other circumstances." *Island Car Wash, Inc. v. Norris*, 358 S.E.2d 150, 153 (S.C. Ct. App. 1987). "Because civil conspiracy is 'by its very nature covert and clandestine,' it is usually not provable by direct evidence." *Moore v. Weinberg*, 644 S.E.2d 740, 750 (S.C. Ct. App. 2007).

While it can be argued that Huggins' evidence of improper motive or purpose as to the alleged co-conspirators is weak, the court believes that at this stage it is sufficient to survive summary judgment. Taking the evidence in the light most favorable to Huggins, summary judgment is denied as to Huggins' claim for civil conspiracy.

E.    South Carolina Unfair Trade Practices Act

Huggins alleges in its counterclaim that Helena's actions violated the South Carolina Unfair Trade Practices Act ("SCUTPA"). To recover under SCUTPA, the plaintiff must establish: 1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; 2) the unfair or deceptive act affected public interest; and 3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive acts. *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006). A showing of adverse public impact is required. The Act is not available to redress a private wrong where the public interest is not affected. An impact on the public interest may be shown if the acts or practices have the

potential for repetition. *Crary v. Djebelli*, 496 S.E.2d 21, 23 (S.C. 1998).  A mere breach of contract does not constitute a violation of SCUTPA. *Key Company, Inc. v. Fameco Distributors, Inc.*, 357 S.E.2d 476 (S.C. Ct. App. 1987).

Helena argues that Huggins' SCUTPA claim is premised upon the alleged breach of contract.  Helena argues that because a mere breach of contract does not constitute a violation of SCUTPA, Huggins SCUTPA claim should be dismissed.  Additionally, Helena argues that Huggins has failed to establish an unfair or deceptive act or practice that has an adverse impact on the public interest.

Huggins responds that the counterclaim contains allegations of negligent and fraudulent misrepresentation and conspiracy and therefore clearly establishes more than a mere breach of contract.  Huggins refers to the following alleged unfair or deceptive acts: 1) improperly charging products to agents and customers who had not purchased such products; 2) refusing to provide confirmation and documentation that the improper charges had been corrected; 3) making certain representations to its agents and customers while secretly acting in controvert to such representations; 4) and scheming with other persons for the purpose of injuring another.

Helena's motion for summary judgment is due to be granted because Huggins has failed to establish that any alleged unfair or deceptive act adversely affects the public interest. To be actionable under the UTPA, an unfair or deceptive act or practice must have an impact upon the public interest. S.C.Code Ann. § 39-1-10(b).  "An impact on the public interest may be shown if the acts or practices have the potential for repetition." *Wright*, 640 S.E.2d at 501. "The potential for repetition may be demonstrated in either of two ways: (1) by showing the

18

same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts." *Id.* at 502. At the hearing, Huggins' counsel conceded that there was no evidence that Helena had committed similar acts against other agents/retailers like Huggins. [Transcript, at 62, Docket Entry #150]. An alleged unfair practice that affects only the parties to the transaction is insufficient under the Act. In spite of Huggins' general and conclusory allegations of possible repetition of the alleged unfair or deceptive acts, any impact on the public interest is simply too speculative to survive summary judgment.

G.    Intentional Interference with Prospective Contract

Huggins' intentional interference with prospective contract is premised upon the allegation that Helena intentionally interfered with Huggins' potential contract with a third party to purchase Huggins Farm Service for $750,000.

The elements of a claim for intentional interference with prospective contractual relations are (1) the intentional interference with the plaintiff's potential contractual relations, (2) for an improper purpose or by improper methods, and (3) causing injury to the plaintiff. *Brown v. Stewart*, 557 S.E.2d 676, 688 (S.C. Ct. App. 2001); *Love v. Gamble*, 448 S.E.2d 876, 882 (S.C. Ct. App. 1994). Generally, there can be no finding of intentional interference with prospective contractual relations if there is no evidence to suggest any purpose or motive by the defendant other than the proper pursuit of its own contractual rights with a third party. *Southern Contracting, Inc. v. H.C. Brown Constr. Co.*, 450 S.E.2d 602, 606 (S.C. Ct. App. 1994). "The plaintiff must actually demonstrate, at the outset, that he had a truly prospective (or potential) contract with a third party." *United Educ. Distrib., LLC v. Educational Testing*

19

*Serv.*, 564 S.E.2d 324, 329 (S.C. Ct. App. 2002). "The agreement must be a close certainty; thus, a mere offer to sell, for example, does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship." *United Educ. Distrib.*, 564 S.E.2d at 330. Likewise, a speculative contract or the mere hope of a contract is insufficient to support a claim. *Id*.

Helena argues that summary judgment should be granted because Huggins cannot demonstrate that it had a prospective contract to sell Huggins Farm Service with a third party. Carolina Eastern Company was the third-party which Huggins alleges made an offer to purchase Huggins Farm Service. However, Helena submitted the affidavit of Jerry Hewitt, an employee of Carolina Eastern, which stated that although he had general talks with Huggins about the possibility of purchasing Huggins Farm Service, no offer was ever made to Huggins because the price was too high. Additionally, Helena argues that there is no evidence of any improper purpose or motive.

Huggins responds that there is a genuine issue of material fact as to whether a potential contract existed between Carolina Eastern and Huggins. Specifically, Huggins argues that there is evidence which indicates that various representatives of Carolina Eastern had approached Huggins on a number of occasions seeking to purchase his business. However, Huggins' evidence does not establish a prospective contractual relationship. At best, the evidence establishes an offer to purchase, which does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with prospective contractual relations. *See United Educ. Distrib.*, 564 S.E.2d at 330. The prospective agreement must be a close certainty. *Id*. Huggins' alleged prospective contractual relationship with Carolina Eastern is

too speculative support a claim. Accordingly, Helena's motion for summary judgment is granted as to Huggins' claim for intentional interference with prospective contract.

### Conclusion

For the reasons stated above, Huggins' [Docket Entry #84] motion for partial summary judgment is **DENIED**, and Helena's [Docket Entry #87] motion for partial summary judgment is **GRANTED in part and DENIED in part**. Specifically, with regard to Huggins' motion for partial summary judgment, summary judgment is denied as to Helena's claims for unjust enrichment and conversion. With regard to Helena's motion for partial summary judgment, summary judgment is denied as to Huggins' claims for breach of contract accompanied by a fraudulent act and civil conspiracy and granted as to Huggins' claims for fraud, negligent misrepresentation, violation of unfair trade practices act, and intentional interference with contractual relations.

**IT IS SO ORDERED**.

Florence, SC                                              s/ R. Bryan Harwell
November 13, 2008                                  R. Bryan Harwell
                                                              United States District Judge

21